UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

AUG 6  10 23 AM '03

CLERK
BY _____
DEPUTY CLERK

| | |
|---|---|
| BENJAMIN JOHNSON, )<br>    Plaintiff )<br> )<br>v. )<br> )<br>PRESIDENT AND TRUSTEES OF )<br>BATES COLLEGE, )<br>    Defendant ) | Docket No. 2:03-cv-212 |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Benjamin Johnson complains against Defendant Bates College as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Benjamin Johnson is an individual who resides in Lyndonville, County of Caledonia, State of Vermont.

2. Defendant President and Trustees of Bates College is a private non-profit corporation, located in the City of Lewiston, County of Androscoggin, State of Maine.

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 as there is complete diversity between the Plaintiff and Defendants in this action and the amount in controversy is in excess of $75,000.00.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to this claim occurred in Vermont. Johnson was residing

and attending high school in Vermont while deciding where to attend college. During that time, the Bates College football coach, Skip Capone, actively recruited Johnson. Capone telephoned Johnson at his residence in Vermont regularly; in the late winter and early spring of Johnson's senior year of high school, he received weekly calls from Capone urging him to come to Bates. Johnson filled out his application for admission in Vermont, received notice of his acceptance in Vermont, received copies of the Bates Student Handbook 2001-2002 Code of Student Conduct and Disciplinary Process in Vermont, signed all documents relevant to his admission and attendance at Bates in Vermont, received tuition bills in Vermont, and sent payment of those bills to Bates from Vermont.

5. Apart from its specific contacts with Johnson in Vermont, Bates also maintains a generalized presence in Vermont. Upon information and belief, Bates participates in more than 150 college fairs, several of which take place in Vermont. Bates seeks alumni volunteers to represent it at these fairs, and to conduct off-campus admissions interviews throughout the United States, including Vermont. According to its published policies, interviews conducted off-campus by Bates alumni representatives are given the same weight as its on-campus interviews.

6. Bates draws a significant number of its students from Vermont. To assist it in drawing students from Vermont, Bates has assigned an Admissions Counselor the responsibility of recruiting students from Vermont. During the 2001-02 academic year, 39 students, or 2.4% of the student body resided in Vermont. This made Vermont the state with the 10th highest representation among Bates students.

## COUNT I
### (BREACH OF CONTRACT)

7. Johnson was a student enrolled at Bates College for his junior year during the 2001-2002 academic year.

8. Bates has a contractual obligation to its students, including Johnson, to abide by its published policies and procedures. These policies and procedures include the Bates Student Handbook 2001-2002 Code of Student Conduct and Disciplinary Process (hereinafter, the "Code").

9. During the Spring of 2002, Johnson was accused of sexual assault by two female students. Johnson denied the allegations made by both accusers.

10. Both female students were on the Bates lacrosse team, and were friends. The second student came forward with older allegations only after her friend made a complaint against Johnson.

11. Both accusations of sexual assault were false.

12. Dean of Students F. Celeste Branham conducted the investigation of both incidents. Pursuant to the Code, she referred the cases to the Student Conduct Committee ("SCC"). *Code*, Part II (B)(4).

13. The SCC is charged under the Code with determining whether a violation of Bates policy has occurred and, if so, determining an appropriate penalty. *Code*, Part II (B)(4).

14. The SCC procedures contained in Bates' published policies and procedures are intended to provide the accused student with a fair and impartial review of the allegations made against him.

15. Dean Branham determined to schedule the SCC hearings for each of the allegations against Johnson on the same day. She scheduled the SCC hearings to be held consecutively, before the same SCC panel.

16. Johnson and his parents, Linda and Eric Johnson, protested to Dean Branham concerning the proposed consecutive hearing schedule. The Johnsons voiced their concern that the Dean's proposed procedure would be unfair to Benjamin because the panel's consideration of the second allegation would be tainted by their knowledge of the first. The Johnsons specifically requested that different SCC panels hear each of the allegations against Benjamin.

17. When Dean Branham refused to convene separate SCC panels to hear each of the allegations against Johnson, Linda and Eric Johnson met with then-President Hayward regarding their concerns. The Johnsons again requested that separate SCC panels be convened to hear each of the charges against Benjamin. President Hayward also refused the Johnsons' request.

18. Both SCC hearings were held on May 20, 2002.

19. The hearing on the first allegation against Johnson began at approximately 4:00 p.m. The hearing and deliberations on the charge were lengthy, and the SCC did not reach a decision until approximately 11:00 p.m.

20. Johnson was found not guilty of the first charged sexual assault.

21. Pursuant to the Code, the members of the SCC, other than its co-chairpersons, do not know the names of the students who will be appearing before them until the hearing is convened. *See Code*, Part II (B)(4)(a)(2). Accordingly, the SCC panel members did not realize

that they would be hearing another accusation against Johnson until he returned to hearing room after completion of the first hearing.

22. When Johnson and his advisor, Professor Hochstadt, returned to the hearing room, they noticed an abrupt change in the attitude of the SCC members toward them. The panel members' mannerisms and tone had changed, and now reflected hostility toward them. At one point during the second hearing, one of the SCC members interrupted Johnson while he was answering a question, and made a degrading personal comment, suggesting that Johnson always had to be the center of attention.

23. The SCC took considerably less time to reach a decision on the second allegation, although the facts were in serious dispute. The SCC found Johnson guilty of unacceptable social behavior by virtue of committing a sexual assault after less than half an hour of deliberations. As a penalty, the SCC dismissed Johnson from Bates.

24. Pursuant to the Code, and the long-standing interpretation of the Code at Bates, the SCC is supposed to be unaware of the accused student's prior disciplinary history until after it has decided whether the student is guilty or innocent of the pending charge. Only if the student is found guilty may the SCC be made aware of the student's prior disciplinary history. In such instances, the Dean may present information from the student's file to the SCC, in the student's presence, and the student is allowed to address the SCC to respond to the information. *Code*, Part II (B)(4)(b)(13).

25.     In the second case, the SCC panel was aware of all of the information relating to the first accusation against Johnson before it began deliberating his guilt or innocence. This is a violation of the Code.

26.     The first accusation, like the second, was an accusation of sexual assault by a member of the women's lacrosse team. Because it had heard the first accusation immediately before the second, and the accusations were of similar conduct, the SCC panel was tainted by its knowledge of the first accusation.

27.     Johnson could not and did not receive a fair and impartial hearing on the second accusation against him. This is a violation of the Code.

28.     Johnson appealed the SCC's decision to the ad hoc Appeals Panel, as required by the Code. The Appeals Panel upheld the SCC's decision to dismiss Johnson from Bates.

29.     The violations of the Code committed constitute a breach of Bates College's contract with Johnson.

30.     As a direct and proximate result of this breach, Johnson has suffered economic damages, including lost salary of not less than $37,500, plus additional tuition and related expenses of approximately $40,000.

31.     Johnson was forced to leave Bates just one year prior to graduating, and to transfer to Norwich University in Vermont. Because credits transferred from Bates can comprise only 40% of the credits forming the basis of Johnson's Norwich degree, Johnson's graduation from college has been postponed by three semesters. Rather than graduating from Bates this spring, as anticipated, and earning a salary at an entry level position in his chosen field, Johnson

and his parents must expend funds to pay for an additional three semesters of tuition, room, and board at Norwich.

32. Johnson also has suffered severe emotional distress as a result of the action of Bates. The end-run around of the Code by Bates resulted in Johnson's being dismissed for misconduct that he did not commit.

33. The fact of this wrongful dismissal will follow Johnson throughout his lifetime, as part of his permanent record. Accordingly, it will impact his future earnings by making it more difficult for him to find employment.

WHEREFORE, Plaintiff Benjamin Johnson demands judgment against Defendant President and Trustees of Bates College for compensatory damages in an amount to be determined at trial, but in no event less than $77,500, together with interest, costs and disbursements (including reasonable attorneys' fees), and such other and further legal and equitable relief as this Court deems just and proper.

### JURY DEMAND

**Plaintiff demands trial by jury as to all issues so triable.**

Dated:     Burlington, Vermont
           August 5, 2003

Andrew D. Manitsky, Esq.
Gravel and Shea
76 St. Paul Street, 7th Floor
P. O. Box 369
Burlington, VT  05402-0369
(802) 658-0220

GRAVEL AND SHEA
ATTORNEYS AT LAW
P. O. Box 369
BURLINGTON, VERMONT
05402-0369

and

Richard L. O'Meara, Esq.
Barbara L. Goodwin, Esq.
Murray, Plumb & Murray
75 Pearl Street, P.O. Box 9785
Portland, ME  04104-5085
(207) 773-5651

For Plaintiff